# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RONALD SMITH

v.

CITY OF ST. GABRIEL

CIVIL ACTION

NO. 15-808-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the *City of St. Gabriel's Motion for Summary Judgment* (Doc. 25) filed by the Defendant, City of St. Gabriel ("Defendant" or "St. Gabriel"). Plaintiff Ronald Smith ("Plaintiff" or "Smith") opposes the motion. (Doc. 25.) No reply was filed. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

This motion presents three main issues. Plaintiff's first claim concerns whether the Plaintiff received the required notice under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") amendment to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1161–1168. The Court finds that, as a matter of law, the Defendant provided timely and sufficient notice of the Plaintiff's COBRA rights by mailing such notice via first class mail within 14 days of the date on which the administrator was notified. Thus, summary judgment is warranted on this claim.

Plaintiff's second claim is that the Defendant violated Section 510 of ERISA, 29 U.S.C. § 1140, by terminating the Plaintiff for his and his wife's exercise of rights under ERISA and/or by interfering with their attainment of ERISA rights. The Court finds that the Plaintiff has failed to demonstrate a genuine issue of material fact that his termination was pretextual. As a result, the Defendant is entitled to summary judgment on this claim as well.

The third issue, connected with the other two, is whether the Court should defer ruling on this motion because of the need for further discovery. The Court finds that the Plaintiff has, for a number of reasons, failed to satisfy the requirements of Fed. R. Civ. P. 56(d). Thus, the Court finds no reason to delay ruling on this motion.

For all of these reasons, Defendant's motion is granted, and Plaintiff's claims are dismissed with prejudice.

I.  **Relevant Factual Background**[1]

  A. **Relevant Individuals**

St. Gabriel became a Louisiana municipality in 1994 and was designated a City in 2001. (Doc. 25 at 3.) Plaintiff was an employee of St. Gabriel. (Docs. 1 at 3; 24 at 2.)

Lehman Raphael has been the City Clerk for St. Gabriel since July 2011. (Doc. 25 at 3.) As City Clerk, he "exercise[s] authority over the custody and control of the personnel files for St. Gabriel's employees." (Doc. 25 at 3.) Raphael's "administrative responsibilities include the notification of an employee's termination to [St. Gabriel's] Group Health Plan Administrator[.]" (Doc. 25 at 3.)

---

[1] The Court notes that many of the following facts are taken from the *City of St. Gabriel's Statement of Undisputed Material Facts* (Doc. 25-1). This is because the Plaintiff did not file a Statement of Contested Facts with his opposition. Local Civil Rule 56(b) provides that parties "opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be tried." M.D. L. Civ. R. 56(b). This rule further states: "All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this Rule." *Id.* Thus, the Court will deem *City of St. Gabriel's Statement of Undisputed Material Facts* (Doc. 25-1) admitted, "except to the extent that [these] 'facts' . . . are contradicted by 'facts' in other materials attached to [Defendant's] motion for summary judgment." *Smith v. Brenoettsy*, 158 F.3d 908, 910 n. 2 (5th Cir. 1998) (citing *Gaspard v. Amerada Hess Corp.*, 13 F.3d 165, 166 n. 1 (5th Cir. 1994)). However, the Court will also not deem admitted any argument or legal conclusions in *City of St. Gabriel's Statement of Undisputed Material Facts* (Doc. 25-1), to the extent such are made. Further, this opinion should reflect that the Court has thoroughly reviewed the documents submitted and/or referenced by the Defendant in support of its motion.

Raphael also authenticates many of the documents relied upon by the Defendant. (Doc. 25 at 3–4.) He attests that all of the documents were contained in Plaintiff's personnel file. (Doc. 25 at 3–4.)

### B. Plaintiff's Group Health Plan: Signing Up, Termination, and Notice

Raphael's affidavit includes as an attachment Plaintiff's "Employee Enrollment Form" for Health Coverage with St. Gabriel's Group Health Care Coverage. (Doc. 25 at 5–7.) Plaintiff executed this document on May 4, 2006, and, in it, Plaintiff enrolled in St. Gabriel's Group Health Insurance Plan. (Docs. 25 at 5, 7; 25-1 at 1.) On the form, Plaintiff lists a particular address in St. Gabriel for his Group Health Insurance Plan.[2] (Docs. 25 at 5; 25-1 at 1–2.)

On December 3, 2014, Plaintiff canceled his insurance coverage, as reflected on a completed Coverage Cancellation signed by Raphael and attached to his affidavit. (Doc. 25 at 9.) This document describes Plaintiff's address as the same one as listed on the earlier enrollment form. (Doc. 25 at 9.) Plaintiff's requested termination date was December 31, 2014. (Doc. 25 at 9.)

Within thirty days, on January 2, 2015, CobraHelp, St. Gabriel's Administrator, sent Raphael an email entitled "New Qualifying Event – Submission." (Doc. 25 at 4, 10.) The correspondence states that "[t]he New Qualifying Event information has been submitted to CobraHelp for Smith, Ronald." (Doc. 25 at 10.) Thus, on or about this day (or at the very least by this day), St. Gabriel notified its Group Health Plan Administrator of Smith's termination of employment. (Doc. 25-1 at 2.)

Critical to this motion, Raphael attaches to his affidavit the following two items. First, Raphael includes a document entitled, "COBRAHELP NOTICE OF RIGHT TO ELECT

---

[2] For the sake of privacy, Plaintiff's address has been omitted from this opinion.

COBRA CONTINUATION COVERAGE." (Doc. 25 at 4, 11.) This document is addressed to Ronald Smith at the same address Smith had provided on his other forms and reflects that the notification date was January 6, 2014. (Doc. 25 at 11.) The attachment states that it "contains important information about [his] right to continue [his] health care coverage in the City of St. Gabriel Health Plan . . ." (Doc. 25 at 11.) The document also attaches an "Election Agreement" in which Plaintiff could elect continued coverage by completing the form and returning it to CobraHelp. (Doc. 25 at 15.)

The second important document is a Certificate of Mailing CobraHelp, which, according to Raphael's affidavit, reflects that the " 'COBRAHELP NOTICE OF RIGHT TO ELECT COBRA CONTINUACTION COVERAGE' was mailed, via first class mail, to" Plaintiff at the same address listed on the other documents discussed above. (Doc. 25 at 4, 16.)

### C. Plaintiff's Termination

Defendant also attaches a letter dated November 6, 2014, sent to Plaintiff from Chris Babin, Rehabilitation Counselor/Consultant of Cypress Vocational Services, LLC. (Docs. 25 at 4, 17; 25-1 at 2.) In the letter, Babin states that Cypress is "the vocational rehabilitation firm retained by [Plaintiff's] workman's compensation carrier to provide vocational rehabilitation efforts on [Plaintiff's] behalf." (Docs. 25 at 17; 25-1 at 2.) Babin also advised Plaintiff "that the City of St. Gabriel has an available modified custodian position which Dr. Isaza has deemed medically appropriate." (Docs. 25 at 17; 25-1 at 2.) Plaintiff was told to report to a particular individual on November 24, 2014 at 7:00 a.m. if he was "interest[ed] in returning to work in this capacity." (Docs. 25 at 17; 25-1 at 2.)

Defendant also includes a "Job Analysis" dated October 8, 2014, from Cypress. (Doc. 25 at 18.) Babin is the listed "Analyst," Plaintiff is the "Claimant," and the "Job Title" is "Modified

Custodian." (Doc. 25 at 18.) The "General Description" states that Plaintiff's "employer is willing to provide modified employment to ensure he doesn't lift over 20 lbs," and a description of the job duties are then provided, along with the physical demands and environmental conditions. (Doc. 25 at 18.)

Lastly, Defendant provides the affidavit of Lloyd Snowten, who has been the Director of Public Services for the City of St. Gabriel since July 2011. (Doc. 25 at 19.) Snowten attests that, in his position, he "exercise[s] authority over the day to day operations of the Public Services Department for St. Gabriel, which includes the supervision of Ronald Smith." (Doc. 25 at 19.) Snowten declares that Plaintiff "did not report to [him] for duty on November 24, 2014" and that Snowten notified the Mayor of Smith's "failure to report for duty" on this day. (Docs. 25 at 19; 25-1 at 3.) Subsequently, on December 1, 2014, Plaintiff's employment with St. Gabriel was terminated by letter from the Mayor. (Docs. 1 at 3; 24 at 3; 25-1 at 3.)

### D. Plaintiff's Evidence

Plaintiff's sole piece of evidence is a March 20, 2015, letter from his attorney to the Mayor of St. Gabriel. (Doc. 27-1 at 1–2.) Plaintiff's counsel stated that, since receiving the Mayor's letter, "no one has assisted [Plaintiff] in providing copies of his personnel file and more importantly, have given [him] any notice of his COBRA rights in accordance with federal law." (Doc. 27-1 at 1.) Plaintiff's counsel also said he tried to speak of the matter at a City Council meeting but was silenced. (Doc. 27-1 at 1.) Plaintiff's attorney further asserted:

> As you should know, [Plaintiff] is entitled to have continued health coverage under federal law and the City of St. Gabriel is required to provide a former employee with a **notice at the time of termination of employment describing the employee's rights to continue coverage and the cost of doing so.** Due to your failure to provide such notice to [Plaintiff], he and his wife have lost their health care coverage and currently have no insurance to cover their ongoing serious medical concerns.

5

(Doc. 27-1 at 1.) The letter concludes with a threat to bring an action in federal court if the matter is not resolved within ten days. (Doc. 27-1 at 1.)

## II.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

### III. Discussion

#### A. Parties' Arguments

Defendant asserts two main arguments. First, Defendant contends that, under the COBRA statutes, it must "notify its Administrator of a qualifying event with 30 days," and, after doing so, "the Administrator must notify [Plaintiff] of his rights under [the] COBRA statute." (Doc. 25-2 at 2 (citations omitted).) Defendant maintains that, under case law, (1) it was only required to make a "good faith attempt to comply with COBRA's notice requirements," and (2) it complied with these requirements by sending the notice via first class mail to the Plaintiff's last known address. (Doc. 25-2 at 2.)

Defendant's second argument attacks Plaintiff's claim that his termination was pretextual. Defendant contends that it had a sufficient basis for concluding "that [Plaintiff] did not want to work for St. Gabriel" based on his failure to report to work on November 24, 2014. (Doc. 25-2 at 3.)

In response, Plaintiff asserts that he "vehemently denies receiving any notification of COBRA rights and even retained counsel to send a letter addressing the issue to which there was no response." (Doc. 27 at 4.) Plaintiff maintains that Defendant did not serve the notice via certified mail and lacks documentation showing that Plaintiff received the notice. (Doc. 27 at 4.) Thus, Plaintiff contends, there is a genuine issue of material fact on the issue of notice.

Plaintiff concludes by saying that he has not yet had an opportunity to propound discovery or depose witnesses, so the Defendant's motion is premature. Plaintiff does not, however, attach a Rule 56(d) affidavit.

Plaintiff provides no response to the argument about pretext. He also submitted no evidence on this issue.

7

## B. Analysis

### 1. COBRA Notice

"COBRA requires sponsors of group health plans to provide plan participants who lose coverage because of a 'qualifying event' with the opportunity to choose to continue health care coverage on an individual basis." *Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir. 2002) (citation omitted); 29 U.S.C. 1161(a). Under 29 U.S.C. § 1163(2), " '[q]ualifying events' include the termination of a covered employee's employment" or a reduction of hours. *Degruise*, 279 F.3d at 336 (citing 29 U.S.C. § 1163(2)).

COBRA further provides that "the employer of an employee under a plan must notify the administrator of a qualifying event" under, among other subsections, § 1163(2), "within 30 days . . . of the date of the qualifying event[.]" 29 U.S.C. § 1166(a)(2). The administrator must then notify, "in the case of [such] a qualifying event[,] . . . any qualified beneficiary with respect to such event . . . within 14 days . . . of the date on which the administrator is notified under" section 1166(a)(2). 28 U.S.C. §§ 1166(a)(2), (a)(4), (c).

Here, notice was timely. On December 3, Plaintiff canceled his insurance coverage, with a requested termination date of December 31, 2014. (Doc. 25 at 9.) Even assuming *arguendo* that the earlier event controls, Defendant notified its administrator of the qualifying event within thirty days of this, by January 2, 2015. (Docs. 25-1 at 2; 25 at 4, 10.) Within fourteen days, on January 6, 2015, the administrator sent Plaintiff the "NOTICE OF RIGHT TO ELECT COBRA CONTINUATION COVERAGE" via first class mail to the address listed in Plaintiff's other COBRA documentation. (Doc. 25 at 4, 11, 16.) Thus, there is no question of fact that the notice was timely.

8

The next question is whether notice by first class mail is sufficient under COBRA. The Fifth Circuit recognizes that " 'employers are required to operate in good faith compliance with a reasonable interpretation' of what adequate notice entails." *Degruise*, 279 F.3d at 336 (citing *Kidder v. H & B Marine, Inc.*, 734 F. Supp. 724, 730 n. 6 (E.D. La. 1990) (quoting H. R. Rep. No. 99-453, at 653 (1985)), *aff'd in part and rev'd in part*, 932 F.2d 347 (5th Cir. 1991)). Thus, in *Degruise*, the Fifth Circuit affirmed a district court's finding that the employer gave adequate notice via certified mail despite the fact that it was "undisputed that [plaintiff] never received a notification letter from [his employer] about his rights under COBRA." *Id.* at 337. In doing so, the Fifth Circuit stated:

> The district court correctly found that "the law requires only that the employer make a good faith attempt to comply with [COBRA's] notification provision." *See DeGruise v. Sprint Corp.,* 1999 WL 486887, *2 (E.D. La.) (citing *Myers,* 912 F. Supp. at 236); *Truesdale v. Pacific Holding Co./Hay Adams Div.,* 778 F. Supp. 77, 81-82 (D.D.C. 1991). "Good faith" can be demonstrated in a variety of ways with respect to COBRA's notification requirements. An employer can hand deliver a letter to an individual or, more commonly, send a letter via first class mail. *See, i.e.*, *Lawrence*, 837 F. Supp. at 782 (finding that employer acted in "good faith" by sending COBRA notification to individual via first class mail); *Dehner v. Kansas City Southern Indus., Inc.,* 713 F. Supp. 1397 (D. Kan. 1989) (employer acted in "good faith" when it hand delivered a COBRA notification letter).

*Id.*

The Court finds this language from *Degruise* squarely on point. Here, the uncontested facts—Raphael's affidavit and exhibits, including a certificate of mailing—show that, on January 6, 2014, the Defendant sent notice of the Plaintiff's right to elect a continuation of coverage to the address listed in Plaintiff's other COBRA documentation. (Doc. 25 at 4, 11–16.) It is also unrebutted that Defendant sent this notice via first class mail—precisely the type of notice of approved by the *Degruise* court.

Plaintiff's contention that notice was insufficient because it was not sent via certified also mail fails, as the *Degruise* court described certified mail as simply "a special type of first class

mail whose primary purpose is to provide evidence of an individual's receipt of delivery."
*Degruise*, 279 F.3d at 337.  Thus, *Degruise* clearly indicates sending notice via first-class mail is sufficient, and that is what the Defendant did in this case.

Plaintiff's last refuge is his assertion that he never received the letter, but this argument also fails.  Even if the Court were to consider the letter from Plaintiff's attorney,[3] the Fifth Circuit has made clear that COBRA's notification rule "does not mean . . . that employers are required to ensure that plan participants actually receive notice." *Degruise*, 279 F.3d at 336. "Rather, it merely obligates employers to use means 'reasonably calculated' to reach plan

---

[3] Until this month, the Court would have refused to consider this document on the sole basis that it was unauthenticated.  *See Robertson v. Home Depot, Inc.,* No 14-806, 2017 WL 1088091, at *1 (M.D. La. Mar. 22, 2017) (" 'To be considered by the court, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." ' " (quoting *Hall v. Johnson*, No. 12-99, 2013 WL 870230, at *1 n. 1 (M.D. La. Mar. 7, 2013)).

However, the Fifth Circuit recently found that, under the 2010 Amendments to Fed. R. Civ. P. 56, a district court cannot refuse to consider a document merely because it is unsworn. *See Lee v. Offshore Logistical and Transp., L.L.C.*, 859 F.3d 353, 2017 WL 2507740, at *2 (5th Cir. 2017).  The Fifth Circuit explained that, "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Id.* at *1 (citing 11 *Moore's Federal Practice-Civil* ¶ 56.91 (2017) and collecting cases).  Thus, in the instant case, the fact that the attorney's letter is unsworn does not automatically bar the use of the letter.

The letter is, however, from an attorney whose sole basis for the statement is hearsay from the Plaintiff.  This would seem to run afoul of the Fifth Circuit's broader interpretation of Rule 56, but the Fifth Circuit at the very least implies that an objection to the evidence is required. *See id.* at *2 ("To avoid the use of materials that lack authenticity or violate other evidentiary rules, the new rule allows a party to object 'that the material cited to support or dispute a fact cannot be presented in a form that would be admissible as evidence" (citing Fed. R. Civ. P. 56(c)(2)).  No such objection to the evidence was made by the Defendant.

As no objection was made, it is unclear from *Lee* whether the Court can, *sua sponte*, refuse to consider the documents.  Earlier Fifth Circuit case law finds that a failure by a party to object to evidence submitted for or against a motion for summary judgment constitutes a waiver.  *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 650 n. 3 (5th Cir. 1992) ("None of the parties objected to or challenged the admissibility of the [plaintiffs'] proffer of the letters and an investigation report accompanying their memorandum, and accordingly, we find that any objections to them are waived." (citing *McCloud River R.R. Co. v. Sabine River Forest Prods., Inc.,* 735 F.2d 879, 882 (5th Cir. 1984) (party waived its objection where it failed to make a timely objection in district court); *Auto Drive–Away Co. of Hialeah v. Interstate Commerce Comm'n,* 360 F.2d 446, 448–49 (5th Cir. 1966) (in the absence of a timely objection or motion to strike, defects in summary judgment evidence ordinarily are waived)).  In *Donaghey*, the Court specifically noted that "the admissibility of evidence on a motion for summary judgment is subject to the same standards and rules that govern admissibility of evidence at trial." *Id.* (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir. 1990)).

Nevertheless, this Court concludes that, even if admissible, Plaintiff's exhibit would fail to prevent summary judgment. Thus, the Court need not reach this issue at this time.

participants." *Id.* And, again, in *Degruise*, it was undisputed that the Plaintiff never received notice. *Id.* at 337.

Accordingly, the Court finds that, by mailing the notice via first class mail to the address listed on the Plaintiff's other COBRA documents, the Defendant used means reasonably calculated to reach Plaintiff and has thus complied with COBRA's notice requirements. As a result, summary judgment is warranted on the issue of COBRA notice, and this claim is dismissed with prejudice.

### 2. ERISA Retaliation

Plaintiff also makes a claim under Section 510 of ERISA, 29 U.S.C. § 1140.[4] This section provides, in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

*Id.* "Under § 510 of ERISA, [the employee] has to establish a prima facie case that [his employer] fired him with a specific discriminatory intent to retaliate for exercising an ERISA

---

[4] No evidence has been submitted in support of this claim. However, in his Complaint, Plaintiff alleges the following:

> Complainant and his wife, Darlene Smith, suffer from numerous health problems and both have undergoing [sic] substantial medical treatment since 2004. . . . After years of outstanding service, [Plaintiff] was injured while in the course and scope of his employment with the City on or about August 5, 2013. . . .[Plaintiff] contends that he never received valid conditions to return to work from his treating physician; however, on or about December 1, 2014, after sixteen (16) months out of work, [Plaintiff's] employment with the City was terminated by the Mayor . . . by correspondence forward to [Plaintiff.] . . . The City's reason for terminating Mr. Smith is pretexual. . . . Upon information and belief, [Plaintiff] was terminated by the City because of extensive costs incurred by the Defendant as a result of [Plaintiff's] worker's compensation claim and [Plaintiff's] wife's utilization of the City's health benefits in violation of 29 U.S.C. § 1140.

(Doc. 1 at 4–5.)

right or to prevent attainment of benefits which he would become entitled to under the plan. *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir.1997) (citations omitted). "The plaintiff in such an ERISA employment discrimination test need not prove that the discriminatory reason was the only reason for discharge, but he must show that the loss of benefits was more than an incidental loss from his discharge, and this inference of discrimination can be proven by circumstantial evidence." *Id.* (citing *Carlos v. White Consol. Indust. Inc.*, 934 F.Supp. 227, 232 (W.D. Tex.1996)). "To dispel the inference of discrimination which would arise from a prima facie case, [the employer] must articulate a non-discriminatory reason for its actions[.]" *Id.* (citing *Lehman v. Prudential Ins. Co. of America*, 74 F.3d 323, 331 (1st Cir. 1996)). "If the defendant provides an acceptable reason for its conduct, the presumption of discrimination disappears, and the plaintiff must demonstrate that the reason given was a pretext for discrimination." *Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698, 716 (S.D. Tex. 2014), *aff'd,* 642 F. App'x 313 (5th Cir. 2016) (citing *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1222 (11th Cir. 1993)).

Here, even assuming that Plaintiff made a prima facie case (which he has not), Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's termination: (1) St. Gabriel offered him a position that his treating physician "deemed medically appropriate" for his condition, (2) St. Gabriel told him to report for work at a particular date and time if he was "interest[ed] in returning to work in this capacity," and (3) Plaintiff failed to return to work at that date and time. (Docs. 25 at 1–2, 17–19; 25-1 at 2–3.)[5] The burden then shifts to the Plaintiff to show pretext.

---

[5] The letter from Babin, the vocational rehabilitation counselor, appears to contain hearsay. However, Plaintiff did not object to this evidence, so, under prior Fifth Circuit case law, any argument that it is inadmissible appears waived. *See supra,* note 3, and *Donaghey*, 974 F.2d at 650 n. 3 (and cases cited therein). Equally importantly, as these facts were deemed admitted in the Statement of Undisputed Facts, and as they are not contradicted by the

He has not met this burden. Plaintiff has failed to provide a single piece of evidence supporting a claim for pretext, and, indeed, his opposition does not even refer to it. There is no genuine issue of material fact, and Defendant is entitled to judgment as a matter of law. Accordingly, summary judgment on this claim is granted, and Plaintiff's claim under Section 510 is dismissed with prejudice.

### 3. Request for Further Discovery

Plaintiff asserts that "Plaintiff has not had the opportunity to propound discovery on the Defendant and depose potential witnesses in this matter and therefore Defendant's Motion for Summary Judgment may be deemed premature." (Doc. 27 at 4.) Plaintiff prays that the Court deny the instant motion and "allow this matter to continue to proceed through the discovery process." (Doc. 27 at 4.)

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" take certain actions, including "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). District courts have discretion to grant or deny a Rule 56(d) motion. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citing *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).

"Rule 56(d) motions for additional discovery are ' "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." ' " *Id.* (quoting *Raby*, 600 F.3d at 561) (quoting *Culwell v. City of Fort Worth,* 468 F.3d 868, 871 (5th Cir. 2006))). Further, "[t]he

---

evidence in the record, *Smith*, 158 F.3d at 910 n. 2, (indeed, the facts are supported by the documents in the record), the Court will not exclude these facts.

purpose of [Rule 56(d)] is to provide non-movants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) (reversing district court for refusing to defer ruling on a motion for summary judgment). "Technical, rigid scrutiny of a [Rule 56(d)] motion is inappropriate." *Union City Barge Line v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1984) (citations omitted). [6]

"Nevertheless, non-moving parties requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.' " *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.' " *Id.* (quoting *Raby*, 600 F.3d at 561).

Despite this liberal standard, Plaintiff has still clearly failed to satisfy the requirements of Rule 56(d). First, Plaintiff did not file an affidavit or declaration to support his request, and this directly violates the rule.

Second, even if Plaintiff had, he did not provide a plausible basis for believing that any specific facts were capable of being obtained within a reasonable amount of time, that these facts probably existed, or that these facts would influence or affect the outcome of the motion. *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). Indeed, Plaintiff pointed to no specific facts whatsoever. Again, the Plaintiff " 'may not simply rely on vague assertions that additional

---

[6] *Wichita Falls* and *Union City* refer to Rule 56(f), but these cases are still relevant. The 2010 Advisory Committee Note to Rule 56 explains that Rule 56(d), as it currently reads, "carries forward without substantial change the provisions of former subdivision (f)."

discovery will produce needed, but unspecified, facts,' " *id.* (quoting *Raby*, 600 F.3d at 561), yet that is exactly what Plaintiff has done.

Third, the Plaintiff's request now appears moot. The cutoff of non-expert discovery was September 9, 2016. (Doc. 17.) Defendant filed the instant motion on September 22, 2016 (Doc. 26), and Plaintiff filed his opposition on October 13, 2016. (Doc. 26.) Plaintiff has not supplemented his opposition with additional evidence or provided any other basis for denying the Defendant's motion, despite having eight and a half months to do so. With trial set for October 11, 2017, the time to supplement has long since passed.

For all these reasons, the Court will reject Plaintiff's request for additional time for discovery. Consequently, on the above grounds, Defendant's motion for summary judgment is granted in full, and Plaintiff's claims are dismissed with prejudice.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *City of St. Gabriel's Motion for Summary Judgment* (Doc. 25) is **GRANTED** and that Plaintiff Ronald Smith's claims against Defendant are hereby **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>July 6, 2017</u>.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**